# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MIGUEL D.,[1] | ) | |
| | ) | No. 23 CV 1448 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security, | ) ) | |
| | ) | April 8, 2026 |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

Miguel D. seeks supplemental security income based on a combination of physical and mental impairments he says prevents him from working. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. For the following reasons, Miguel's remand request is denied:

## Procedural History

Miguel filed his benefits application in October 2019 claiming disability onset on January 1, 2016. (Administrative Record ("A.R.") 19, 178-86.) After his application was denied at the administrative level, (id. at 69-80, 82-105), he sought and was granted a hearing before an Administrative Law Judge ("ALJ"), where he and a vocational expert testified, (id. at 43-68, 124-26). The ALJ concluded in June 2022 that Miguel is not disabled. (Id. at 19-36.) After the Appeals Council denied

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Miguel's first name and last initial in this opinion to protect his privacy to the extent possible.

Miguel's request for review, (id. at 1-6), he sought judicial review, and the parties consented to this court's jurisdiction, 28 U.S.C. § 636(c); (R. 7).

## Analysis

Miguel argues that the ALJ: (1) improperly evaluated his subjective symptom statements; (2) incorrectly assessed psychological consultative examiner ("CE") Dr. Michael Stone's opinion; and (3) failed to supply substantial evidence to support the assigned mental residual functional capacity ("RFC"). (See generally R. 17, Pl.'s Br.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation . . . that is 'sufficient to allow [the] reviewing court[ ] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118,

2

1121 (7th Cir. 2014)). Viewing the record under this standard, remand is not warranted.

## A. Symptom Evaluation

The court turns first to Miguel's argument that the ALJ did not properly evaluate his symptom statements because that analysis informs several other aspects of the ALJ's decision, including the RFC assessment. (R. 17, Pl.'s Br. at 14-16.) An ALJ's symptom evaluation is entitled to great deference and may be reversed only where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). The ALJ must consider factors like medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors. SSR 16-3p, No. SSA-2015-0055, 2017 WL 5180304, at *3 (Oct. 25, 2017). That said, the court will not disturb a subjective symptom evaluation that is logically based on specific findings and evidence. *See Murphy*, 759 F.3d at 815-16.

Miguel first argues that the ALJ improperly considered his daily activities, including his ability to perform "chores around the building for the landlord and neighbors, cook, clean, [] sometimes take walks," and "maintain his own hygiene without assistance on a daily basis." (R. 17, Pl.'s Br. at 14-16 (citing A.R. 24, 445).) He says that the ALJ failed to explain how his daily activities undercut his subjective allegations. (See id. at 15 (citing *Jelenik v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).) The court disagrees. The ALJ discussed Miguel's testimony that he experiences "chronic fatigue, shortness of breath, loss of strength, widespread joint pain, [and] diminished movement," which he says prevent him from "walk[ing] farther than two

3

to three blocks before needing to sit down, stand[ing] for extended periods, [and] squatting, kneeling, or climbing stairs." (A.R. 27.) The ALJ also acknowledged Miguel's allegations that his mental impairments severely restrict "his ability to concentrate, retain information, maintain normal energy levels, interact appropriately with others, and complete tasks." (Id.) However, when comparing Miguel's symptom allegations with his ability to perform "a wide range of activities," the ALJ concluded that "his physical and mental impairments [we]re not as severe as alleged." (Id. at 34.)

In so finding, the ALJ "examine[d] all of the evidence, including [Miguel's] daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated," and found the latter was true here. *Hahn v. Kijakazi*, No. 22-1106, 2022 WL 6628832, at *2 (7th Cir. Oct. 11, 2022) (quotation and citations omitted). For example, the ALJ pointed to psychological CE Dr. Daniel Louis Friedman's January 2020 findings that despite Miguel's reports that he "spends most of his day watching television," on evaluation Miguel "demonstrated appropriate attitude [] and behavior" and had "an adequately developed vocabulary," even though he "spoke in a direct abbreviated fashion." (A.R. 27-28.) The ALJ further recited Dr. Friedman's findings that Miguel had only "mild deficits in fund of information, immediate memory, and past memory," and his "recent memory and judgment were within normal limits." (Id. at 28.) Considering these findings along with Miguel's ability to perform chores in his building, cook, clean, and take walks, the ALJ

4

determined that Miguel's daily activities suggest greater functioning than he alleged. (See id. at 27-28.)  The court finds no patent error in the ALJ's analysis here.

Next Miguel complains that the ALJ erred by characterizing his treatment as "sparse" and "conservative."  (R. 17, Pl.'s Br. at 15-16.)  The ALJ noted the "absence of aggressive treatment" for Miguel's physical impairments and cited to records from "[t]reating and examining sources" who observed "only slightly diminished muscle strength, range of motion, and overall neurologic functioning," which she found inconsistent with Miguel's subjective allegations.  (A.R. 34.)  The ALJ further indicated that Miguel's "sparse mental health treatment was [] conservative in nature."  (Id.)  Miguel says the ALJ was required to consider the fact that he did not seek more treatment because he suffers from a mild cognitive disorder, difficulty reading, and memory deficits.  (R. 17, Pl.'s Br. at 15-16.)  Yet when assessing the paragraph B criteria, the ALJ determined that despite exhibiting borderline to low average functioning[2] during psychological CE Dr. Stone's examination, (see A.R. 24 (citing id. at 570)), Miguel's mental health as reflected in the record was largely normal, in that Miguel showed no signs of "depression, anxiety, or agitation and

---

[2] The Seventh Circuit has explained that "[g]enerally, an IQ of 70 is considered just at the borderline" of significant limitation in cognitive functioning.  *Mendez v. Barnhart*, 439 F.3d 360, 361 (7th Cir. 2006).  Low average functioning indicates a higher level of functioning than borderline.  *See Mark N. v. Kijakazi*, No. 22 CV 50102, 2023 WL 6311698, at *2 (N.D. Ill. Sept. 28, 2023) (noting that the claimant's "previous cognitive functioning was in the low average range and his current measurement was in the borderline range, representing a decline in functioning").  Here, Dr. Stone administered the Wechsler Memory Scale-IV and found that Miguel achieved index scores of 74 (auditory memory), 80 (visual memory), 85 (visual working memory), 72 (immediate memory), and 74 (delayed memory), indicating borderline to low average functioning.  (A.R. 567-68.)

normal orientation, behavior, judgement, insight or overall psychological functioning," (id. at 24-25 (citing id. at 331-34 (November 2019 hospital record reflecting well-oriented mental status and normal, cooperative behavior), 357-58 (December 2019 follow-up record noting Miguel exhibited "no depression, anxiety, or agitation"), 369-70 (June 2019 treatment revealing "no depression, anxiety, or agitation" and intact judgment and insight), 444 (noting Dr. Friedman's January 2020 finding on examination that Miguel "displayed an adequately developed vocabulary for his level of educational attainment, but spoke in a direct abbreviated fashion")).) The ALJ also observed that Miguel "was able to answer questions fairly well at the [administrative] hearing." (Id. at 25, 34.) These findings bolster the ALJ's determination that Miguel's treatment did not support the severity of symptoms he alleged. *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (rejecting the claimant's assertions that the ALJ "placed too much weight on the conservative course of treatment" where medical records did not support the claimant's allegations). Accordingly, remand is not warranted on this ground.

**B.    Opinion Evidence**

Miguel argues that the ALJ "speculatively and improperly" evaluated Dr. Stone's opinion that Miguel's ability to function is "fair" to "poor." (R. 17, Pl.'s Br. at 4-12.) An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, she must assess the persuasiveness of all medical opinions by considering and explaining the most important factors—supportability and consistency. 20

C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by the medical source, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while the consistency factor directs the ALJ to assess how the opinion is consistent with all other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required to, explain how she considered the medical source's specializations and relationship with the claimant and any other factors that tend to support or contradict the source's opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

Dr. Stone performed a psychological consultative evaluation for Miguel in May 2021. (A.R. 567-72.) As part of the evaluation, Dr. Stone reviewed Miguel's medical and laboratory records from St. Mary of Nazareth Hospital ("St. Mary"), treatment records from Erie Humboldt Health Center ("Erie Health"), and a January 2020 psychological consultation evaluation by a previous CE, Dr. Friedman. (Id. at 567.) Dr. Stone also performed cognitive testing that revealed "poor" memory and impaired abilities in "complex calculations," general knowledge, comprehending similarities and differences, and abstract thinking. (Id. at 569-71; see also id. at 29 (describing Dr. Stone's evaluation as endorsing "borderline range in auditory memory, low average range in visual memory, low average range in visual working memory, borderline range in immediate memory, and borderline range in delayed memory").) However, Miguel had intact judgment, adequate orientation, and appropriate behavior. (Id. at 569-71.) Dr. Stone noted that Miguel participated in special

7

education but dropped out of high school, and diagnosed him with a "mild" neurocognitive disorder, "mild to moderate" depression, alcohol abuse in remission, and learning disorder by history. (Compare id. with id. at 445-47 (Dr. Friedman diagnosed Miguel with major depressive disorder, mild and recurrent, and alcohol use disorder, severe).)

Based on his findings, Dr. Stone opined that Miguel had "fair" ability to relate to others and "poor" ability to understand, remember, and follow simple directions, maintain the attention required to perform simple, repetitive tasks and sustain concentration, persistence, and pace ("CPP"), and adapt to and withstand stress. (Id. at 571-72.) He further opined that Miguel could not manage funds if disability benefits were awarded. (Id. at 572.) However, the ALJ found Dr. Stone's opinion unpersuasive because the evaluation was limited to one appointment, Dr. Stone failed to provide "a function-by-function analysis" of Miguel's limitations, and the opinion was only "somewhat consistent" with Dr. Stone's clinical observations and not consistent with the objective medical evidence. (Id. at 28-29, 33-34.)

Miguel says that Dr. Stone did supply "a function-by-function analysis," having identified "poor" functioning in "following and remembering simple directions, maintaining attention on simple tasks, and withstanding stress." (R. 17, Pl.'s Br. at 7.) The government does not dispute this point. (See generally R. 23, Govt.'s Mem.) And despite the difference in terminology between the SSA ("none, mild, moderate, marked, and extreme"), 20 C.F.R. § 404.1520a(c)(4), and Dr. Stone ("fair" and "poor"), the court agrees. Accordingly, this factor does not supply the substantial evidence

8

needed to affirm the ALJ's decision. That said, the ALJ provided other substantial evidence to support her evaluation of Dr. Stone's opinion.

Indeed, the ALJ appropriately determined that the "poor" ratings Dr. Stone assessed were not consistent with "borderline to low average scores" or a "mild" neurocognitive disorder. (A.R. 34.) She also noted that Miguel's providers generally observed that he "exhibited no depression, anxiety, or agitation and normal orientation, behavior, judgement, insight, or overall psychological functioning." (Id. at 24.) And the ALJ found Dr. Stone's opinion at odds with those the state agency psychological consultants rendered—opining that Miguel could "perform some judgment and adaptation, but not complex duties," (id. at 32 (citing id. at 69-80 (initial level of administrative review))), and understand and remember "simple instruction," perform "simple, routine tasks" with no fast-paced tasks or strict production quotas, interact briefly and superficially with others, and adapt to "routine changes," (id. (citing id. at 82-105 (reconsideration level of administrative review))). The ALJ deemed "persuasive" the state agency psychological consultant opinions because they were "generally consistent with the medical evidence." (Id. at 32-33.)

Miguel argues that the ALJ failed to provide a "good explanation" for discounting Dr. Stone's opinions. (R. 17, Pl.'s Br. at 11 (internal quotations omitted).) He says the ALJ improperly focused on Dr. Stone's "one-time evaluation" because that reasoning would invalidate all consultative examinations. (Id. at 4, 7.) The court shares Miguel's concerns because while the applicable regulations allow an ALJ to

consider the nature of a provider's relationship with the claimant, the most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2). But here the ALJ adequately explained why Dr. Stone's opinion was not supported by his own clinical observations despite a "thorough diagnostic evaluation." (A.R. 34.) As discussed, the ALJ found that Dr. Stone's "poor" ratings did not align with Miguel's "borderline to low" functioning scores or his "mild" neurocognitive disorder. (Id.) This was not improper.

The ALJ also offered well-supported reasons for concluding that Dr. Stone's opinion was inconsistent with the record. (See R. 23, Govt.'s Mem. at 4-5.) Indeed, the ALJ noted that the medical evidence shows that Miguel "exhibited no depression, anxiety, or agitation and normal orientation, behavior, judgement, insight, or overall psychological functioning." (A.R. 24.) Furthermore, the state agency psychological consultants "thoroughly" reviewed the "bulk" of the available medical evidence and assigned less restrictive RFCs that are consistent with the record evidence. (Id. at 32.) The initial consultant did not have access to the entire record, but the ALJ noted this fact and found that as a result, the consultant "underestimated" Miguel's limitations from his mild neurocognitive disorder. (Id.) Regardless, the consultant on reconsideration reviewed more evidence of record and opined that Miguel was capable of even more. (Id.) In contrast, Dr. Stone found Miguel's mental functioning more restrictive, which the ALJ said was inconsistent with the medical evidence. (Id. at 32-33.)

10

Miguel also lodges other complaints against the ALJ's opinion evaluation, but none diminishes the substantial evidence the ALJ cited. For instance, Miguel claims that the ALJ "improperly substituted her judgment for Dr. Stone's opinion" in finding his "poor" ratings inconsistent with "borderline to low average scores." (R. 17, Pl.'s Br. at 5.) But the state agency psychological consultants also disagreed with Dr. Stone's assessment and adopted less restrictive limitations. (See A.R. 32-33 (citing id. at 69-80, 82-105).) State agency psychological consultants are considered "to be 'highly qualified and experts in Social Security disability evaluation.'" *See Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citing 20 C.F.R. § 404.1513a(b)(1)). At bottom, the ALJ "minimally articulate[d] [her] reasoning for crediting [the] non-treating state agency [psychological consultants'] opinions" over Dr. Stone's. *Id.*

Miguel next suggests that the ALJ's opinion evaluation was premised on "an incorrect understanding" of his "mild" neurocognitive disorder and, as such, greater restrictions are required. (R. 17, Pl.'s Br. at 5-6.) But the ALJ considered the evidence and determined that Miguel's neurocognitive disorder warranted numerous limitations, including that he: "can understand, remember, carry out, and adapt to the demands of only simple routine repetitive work tasks that can be learned by oral instruction or visual demonstration, and make only simple work related decisions"; "can never perform fast paced production line work tasks that are timed, only goal oriented work tasks"; "can adapt to only occasional changes to the work setting"; and "cannot perform work tasks that require interaction with the general public or work

11

on joint tasks with coworkers, but he can tolerate contact that is brief and superficial with coworkers." (A.R. 26.) While Miguel asserts that his impairments supported a finding of "disabling limitations," (R. 17, Pl.'s Br. at 6), the ALJ has "'final responsibility' for determining a claimant's [RFC] and need not adopt any one doctor's opinion," *Fanta v. Saul*, 848 Fed. Appx. 655, 658 (7th Cir. 2021).

Miguel further contends that that ALJ erred because she could reject Dr. Stone's opinions "only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." (R. 17, Pl.'s Br. at 7-8.) In the case Miguel cites for support, *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017), the Seventh Circuit found that "without any logical explanation, the [ALJ] gave substantial weight to the opinions of consulting physicians who had never examined [the claimant], saying only that they had provided 'a good synopsis of the evidence' and that 'their opinions [we]re consistent with the overall record.'" But here, the ALJ explained why Dr. Stone's clinical observations did not support his findings and why those findings are inconsistent with the record evidence. (See A.R. 34.) Moreover, the initial consultant acknowledged Miguel's "severe substance abuse [disorder]," anxiety, difficulty managing funds, and moderate limitations in carrying out detailed instructions and maintaining attention and concentration for extended periods but found Miguel "mentally capable of performing work that requires some judgment and adaptation." (Id. at 77-79.) The consultant on reconsideration assessed moderate limitations in all four functional areas and limited Miguel to understanding and remembering simple

12

instructions, performing simple, routine tasks, engaging in brief and superficial contact with co-workers, supervisors, and the public, and adapting to only routine changes in a workplace setting, without any fast-paced tasks with strict production quotas. (Id. 98-102.) The ALJ found these opinions persuasive because they are consistent with the record evidence. (See id. at 24-34.)

Finally, Miguel points to other evidence he says is consistent with Dr. Stone's opinion, including two examinations showing Miguel presented with anxious, talkative mood and agitated, nervous mood and affect, respectively. (R. 17, Pl.'s Br. at 9-10 (citing A.R. 388-89 (December 2019 Erie Health treatment record noting anxious, talkative mood and affect), 456 (February 2020 Erie Health treatment record reflecting agitated, nervous mood and affect).) The ALJ addressed both examinations in her evaluation, albeit in the context of Miguel's non-severe physical impairments. (See id. at 23 (ALJ referring to id. at 388-89 in her discussion of non-severe physical impairments), 31 (ALJ referring to id. at 456 when stating that Miguel had "bilateral upper extremity tremors when he does not drink"); see also id. at 30 (ALJ mentioning that Miguel experienced anxiety symptoms during withdrawal treatment for alcohol abuse).) In any event, the ALJ weighed the evidence as a whole and relied on records showing Miguel's providers "continuously observed . . . no depression, anxiety, or agitation and normal orientation, behavior, judgement, insight, or overall psychological functioning." (A.R. 25 (citing id. at 331-34 (November 2019 St. Mary record reflecting public intoxication, but Miguel's neurological examination revealed no focal, cranial nerve, or sensory deficits, alert and well-oriented mental status, and

13

normal, cooperative behavior), 357-58 (December 2019 Erie Health record reporting Miguel fell off a bicycle while intoxicated and sustained a facial fracture, but on examination Miguel exhibited "no depression, anxiety, or agitation"), 369-70 (June 2019 Erie Health treatment record reporting bee sting, but Miguel's physical examination revealed "no depression, anxiety, or agitation" and intact judgment and insight), 486-89 (May 2020 Erie Health visit revealing "no depression, anxiety, or agitation" and intact judgment and insight), 574-76 (May 2021 internal medicine consultative examination revealing Miguel was unable to provide the date or perform multiplication but was well-oriented, could recall two of three items, knew the current president's name, could perform simple addition and subtraction, and had normal affect)).)  Where, as here, the ALJ minimally articulated her reasons for rejecting Dr. Stone's opinion, and those reasons were well supported, the court "will not substitute [its] judgment . . . by reweighing the evidence."  *Yokosh v. Bisignano*, No. 24-1632, 2026 WL 774789, at *5 (7th Cir. March 19, 2026) (quoting *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021)).

## C.    Mental RFC

Miguel contends that the ALJ failed to support her mental RFC finding that he could "sustain work performed by following oral instruction" because he needed "work tasks repeated to him due to memory deficits." (R. 17, Pl.'s Br. at 12-13.)  An RFC measures the tasks a person can perform given his limitations based on "all the relevant evidence" in the administrative record.   20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).  When developing the

14

RFC, the ALJ must incorporate a claimant's limitations, including those that are not severe, and may not dismiss a line of evidence that is contrary to the ruling. *Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). In so doing, the ALJ must "say enough to enable review of whether she considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and her conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

The ALJ found that Miguel had the mental RFC to "understand, remember, carry out, and adapt to the demands of only simple routine repetitive work tasks that can be learned by oral instruction or visual demonstration, [] make only simple work related decisions," and "adapt to only occasional changes to the work setting." (A.R. 26.) She further determined that Miguel "can never perform fast paced production line work tasks that are timed, only goal oriented work tasks" or "work tasks that require interaction with the general public or work on joint tasks with coworkers, but he can tolerate contact that is brief and superficial with coworkers." (Id.)

Miguel argues that the ALJ failed to grapple with evidence showing that he cannot "sustain tasks of *any* complexity and would instead need frequent reminders to complete his work." (R. 17, Pl.'s Br. at 13-14 (emphasis in original).) In so arguing, Miguel relies in part on Dr. Stone's opinion that he had "poor" ability to understand, remember, and follow simple directions and maintain the attention required to perform simple, repetitive tasks and sustained CPP because of "immediate memory

deficits and deficits with recall" and "cognitive and memory impairment," respectively. (Id. at 13.) But the ALJ provided substantial evidence to support her finding that Dr. Stone's opinion was unpersuasive. (See id. at 33-34.)

Miguel also asserts that the ALJ "erred by interpreting raw medical data without expert input." (R. 17, Pl.'s Br. at 12.) As discussed, the state agency psychological consultants opined at the initial level that Miguel could "perform some judgment and adaptation, but not complex duties" and on reconsideration that Miguel could understand and remember "simple instruction," perform "simple, routine tasks" with no fast-paced tasks or strict production quotas, interact briefly and superficially with others, and adapt to "routine changes." (A.R. 69-80, 82-105.) And when evaluating Dr. Stone's findings, the ALJ further noted that although Miguel could not "recall three objects after three or five minutes" and could only "name two of our recent US Presidents," he was able to "repeat four digits forward and backward, state the route he took to the clinic, and state his birthdate and address." (Id. at 29.) The ALJ relied on this evidence when crafting Miguel's mental RFC.

Furthermore, given Dr. Stone's findings, the ALJ said she limited Miguel to "understanding, remembering, carrying out, and adapting to the demands of only simple routine work tasks that can be learned by oral instruction or visual demonstration, making only simple work-related decisions, and adapting to only occasional changes to the work setting." (Id. at 29-30.) The ALJ also assessed additional restrictions based on Miguel's CPP deficits. (Id. at 30.) As such, the ALJ

16

properly considered Miguel's mental impairments and limited his mental RFC accordingly. (Id. at 29-34.)

## Conclusion

For the foregoing reasons, Miguel's remand request is denied, and the Commissioner's decision is affirmed.

ENTER:

Young B. Kim
United States Magistrate Judge

17